BRYANT ELECTRIC COMPANY,
INC., Appellant,

v.

CITY OF FREDERICKSBURG and
Malcolm Pirnie, Inc., Appellees.

No. 84–1137.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1985.

Decided May 23, 1985.

C. Allen Foster and Richard Conner, Greensboro, N.C. (Foster, Conner & Robson, Greensboro, N.C., on brief), for appellant.

William D. Bayliss, Richmond, Va. (Paul S. Bliley, Jr., Browder, Russell, Morris & Butcher, Richmond, Va., on brief) and Murray H. Wright, Richmond, Va. (Edward E. Nicholas, III, McGuire, Woods & Battle, Richmond, Va., on brief), for appellees.

Before HALL, ERVIN and SNEEDEN, Circuit Judges.

SNEEDEN, Circuit Judge:

Plaintiff, Bryant Electric Company, Inc. ("Bryant"), appeals from an order of the United States District Court for the Eastern District of Virginia granting the motions to dismiss filed by the respective defendants, Malcolm Pirnie, Inc. ("Pirnie") and the City of Fredericksburg ("City"). The district court dismissed Bryant's claim against Pirnie for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). The district court declined to exercise jurisdiction over Bryant's claim against the City because it enforced a forum selection clause in the contract between the City and Bryant providing for all claims to be litigated in the Circuit Court for the City of Fredericksburg. We agree and accordingly affirm the order of the district court.

Bryant, a North Carolina corporation with its principal place of business in High

Point, North Carolina, is a general contractor. Bryant entered into a contract with the City in August 1982, following a competitive bidding process, to construct an aqueduct from the Rappahanock River to the City's water filtering plant and to perform certain restoration work on intake gates at a dam on the river. Pirnie, a New York corporation with its principal place of business outside Virginia, had been hired by the City in 1981 to provide architectural and engineering services for this project. Pirnie, under its contract with the City, was also to serve as the City's authorized representative and agent during the construction period.

Bryant alleges that it has suffered economic loss because of errors by Pirnie in the design and supervision of the project. Bryant maintains that Pirnie's errors caused significant delay and additional expense. The original contract price was $1,549,550.00. Bryant claims that the cost of the extra work which it performed exceeds $550,000.00.

Bryant brought suit against Pirnie and the City seeking to hold the defendants jointly and severally liable for the additional cost.[1] Bryant sued the City for breach of contract. Bryant sued Pirnie in tort, alleging negligence in the design and supervision of the project. No contract exists between Bryant and Pirnie, and Bryant does not allege that it is a third-party beneficiary of the contract between Pirnie and the City.

Bryant filed its diversity suit in federal court despite the forum selection clause in its contract with the City designating the Circuit Court of the City of Fredericksburg as the appropriate forum for resolution of disputes. Bryant, however, has filed an identical action in the Circuit Court for the City of Fredericksburg.

## II.

To resolve Bryant's claim against Pirnie, this Court must decide whether there exists a cause of action in tort under Virginia law for a contractor to recover against an engineer for economic loss in the absence of privity. Because this is a diversity case, we must decide this issue as we believe the Supreme Court of Virginia would decide were it faced with the issue. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 83 L.Ed. 1188 (1938). Unfortunately, the Supreme Court of Virginia has not yet addressed this specific issue. There is, however, a case pending before the Supreme Court of Virginia in which this identical issue is raised. *Blake Construction Co. Inc. v. Milton M. Alley, et al.*, No. 831942 (Circuit Court, City of Richmond, September 8, 1983). It appears unlikely that a decision will be rendered in that case in the near future. In view of this delay, we have determined that we must proceed to decide the case before us despite our preference for guidance from the Supreme Court of Virginia.

The district court concluded that there was no such cause of action under Virginia law and accordingly dismissed Bryant's claim against Pirnie under Fed.R. Civ.P. 12(b)(6). The district court, noting the absence of any Virginia Supreme Court decision directly on point, turned to the "host" of lower Virginia courts of record which have decided the issue. Joint Appendix at 44. These lower courts have consistently held that a contractor may not recover for purely economic losses suffered as a result of an architect's or engineer's negligence absent privity of contract. In *J. West Construction Co. v. Beeson, Lusk, Jones, Inc.*, for example, a subcontractor sought delay damages resulting from an

---

**1.** Bryant specifically seeks from the City and Pirnie $558,392.54 which it contends is for additional work performed. Pirnie characterizes this amount as delay damages. Brief for Appellees at 3. Bryant further seeks a declaration that it is entitled to a Certificate of Substantial Completion dated and effective as of October 6, 1983, and an extension of the contract time by 138 days. Bryant also requests a judgment against the City for $81,517.76 which it maintains is the unpaid balance pursuant to the contract and a judgment against the City for $9,021.99 which it claims is the value of certain change orders it performed at the direction of the City. Joint Appendix at 12–13.

architect's alleged negligence. In sustaining the architect's demurrer with prejudice, the Circuit Court for the City of Richmond stated the following:

> [T]here is no duty owed by an architect to a subcontractor, unless a contractual duty exists; and there is no contractual duty alleged in this case. The architect's duty runs to the owner, not to the contractor or subcontractor.

*J. West Construction Co. v. Beeson, Lusk, Jones, Inc.*, LE–1095 (Circuit Court, City of Richmond, April 16, 1982). Addendum to Appellees' Brief at 11.[2]

While Bryant correctly argues that such lower court opinions, particularly if unpublished, are not binding on the Virginia Supreme Court or on this Court, these decisions "are entitled to consideration as an indication of what state law is. . . ." Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 4507 (1981). In *Harris v. Lukhard*, 733 F.2d 1075 (4th Cir.1984), this Court was faced with an issue of state law on which the Supreme Court of Virginia had not yet ruled. Following a discussion of relevant Virginia Circuit Court decisions, the Court stated that, while such decisions were not controlling, a federal court should attribute some weight to the state's lower courts' interpretation of the state statute in question. *Id.* at 1082. This would seem particularly true in the case before us in light of the number of these lower court opinions and the consistency of their holdings.[3]

We also believe that § 8.01–223 of the Virginia Code may be read as barring Bryant's claim against Pirnie for lack of privity. Section 8.01–223 reads as follows:

> *Lack of privity no defense in certain cases.*—In cases not provided for in § 8.2–318 where recovery of damages for injury to person, including death, or to property resulting from negligence is sought, lack of privity between the parties shall be no defense.

Code of Virginia § 8.01–223 (1950), as amended. This statute, enacted in 1966, is in derogation of the common law requirement of privity.[4] *Farish v. Courion Industries, Inc.*, 754 F.2d 1111 (4th Cir.1985). Such statutes are, therefore, to be strictly construed and are not to be extended be-

**2.** *Accord, Mechanical Constructors, Inc. v. Stafford County Virginia,* Case No. 501–82 (Circuit Court, Stafford County, January 27, 1984) (dismissing, for lack of privity, contractor's claim against engineers for economic damages resulting from engineers' alleged negligence). *Blake Construction Co., Inc. v. Milton M. Alley, et al.,* LG–2 (Circuit Court, City of Richmond, September 8, 1983) (dismissing contractor's claim against architect for economic damages. This case is now on appeal before the Virginia Supreme Court.) *A & L Construction and Concrete Corp. v. Virginia Travel Council,* LF–1558 (Circuit Court, City of Richmond, September 26, 1983) (engineer does not owe a duty to the plaintiff, as contractor, to protect it against economic loss); *Shenandoah Investment Corp. v. Monger Brothers Contractors,* Law No. 6577 (Circuit Court, Rockingham County, March 21, 1983) (dismissing contractor's third-party claim against architect for negligence because no contractual relationship alleged); *J. West Construction Co. v. Fidelity and Deposit Co., et al.,* LE–573 (Circuit Court, City of Richmond, April 16, 1982) (architect's duty runs to the owner with whom he has a contract and not to the subcontractor); *The Chesapeake and Potomac Telephone Company of Virginia v. Federal Insurance Co.,* (Circuit Court, Montgomery County, May 12, 1981) (contractor may not maintain an ac-

tion against architects for recovery of economic damages resulting from negligent design and administration of the construction contract).

**3.** It is also helpful to examine decisions of the Virginia Supreme Court in related areas of law. The Virginia Supreme Court has held, for example, that a contractor is not a third party beneficiary of the contract between the owner and the architect. *Valley Landscape Co. v. Rolland,* 218 Va. 257, 237 S.E.2d 120 (1977). It has also held that an attorney is liable for damages only to his client. *Ayyildiz v. Kidd,* 220 Va. 1080, 266 S.E.2d 108 (1980). In *Ayyildiz,* a doctor who was successful in defending himself in a malpractice suit sued the attorney who had represented the plaintiff. The doctor alleged that the attorney was negligent in failing to investigate the plaintiff's claim. The Virginia Supreme Court held that the attorney was under no legal duty to the doctor and was not liable in negligence to him.

**4.** Section 8.01–223 is a companion statute to § 8.2–318, which is a part of Virginia's Uniform Commercial Code. Section 8.2–318, enacted in 1962, abolishes the privity requirement in actions against a manufacturer or seller of goods to recover damages for breach of warranty or for negligence.

yond their express terms. *Id.* at 1115. *Chesapeake & Ohio Railway v. Kinzer,* 206 Va. 175, 142 S.E.2d 514 (1965).

Section 8.01–223, by its own terms, abolishes the privity requirement in cases involving injury to person or *injury to property* resulting from negligence. It does not, however, appear to abolish the common law requirement of privity for negligence suits in which the plaintiff has suffered only economic loss. The Virginia legislature could have drafted a statute which simply abolished the privity requirement in *all* negligence suits, or the legislature could have specifically included "economic loss" in the statute.[5] Instead, it chose a narrower provision, abrogating the common law requirement of privity only where *injury* to property or person occurs.

A proper reading of the express terms of § 8.01–223, therefore, would seem to require some *physical* injury to the plaintiff's property before a suit may be maintained in the absence of privity. This statute has been interpreted to require physical injury by a lower Virginia court in *Mechanical Constructors, Inc. v. Stafford County, Virginia* Case No. 501–82 (Circuit Court, Stafford County, January 27, 1984). *Mechanical Constructors* involved a claim by a contractor against an engineering firm for economic damages resulting from the firm's alleged negligence. The Court stated that, "[t]he claim herein is not for injury to person or property. Hence, *Code Section 8.01–223* does not apply to exonerate this claim from the traditional requirements of privity."

Bryant argues that such a distinction between economic loss and physical injury to property is an artificial one and should be rejected by this court.[6] The distinction, however, is not ours to make. It is one which we believe has been made by the Virginia legislature and is one by which we are bound.[7]

---

**5.** For example, an analogous Mississippi statute reads as follows:

> In all causes of action for personal injury or property damage *or economic loss* brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain such action. (emphasis added).

Miss.Code Ann. § 11–7–20 (Supp.1976).

**6.** The distinction between economic loss and physical injury is one which has been made in other contexts by courts and by commentators. With regard to products liability law, for example, Prosser states the following:

> Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.

Prosser, *Law of Torts,* 4th Ed. (1971), p. 665. This so-called "economic loss" rule has been applied by some courts outside the products liability context to other areas of negligence law. *See Flintkote Co. v. Dravo Corp.,* 678 F.2d 942 (11th Cir.1982) (tort suit for economic loss barred by Georgia's economic loss rule despite fact that defendants were professionals and not manufacturers). One commentator has argued for application of an economic loss rule in negligence actions against architects and engineers. Purcell, Phillip F., "Liability of Architects and Engineers to Third Parties for Economic Loss," presented to the Section on Litigation of the American Bar Association, November 5, 1983.

**7.** Bryant cites several Virginia Supreme Court decisions for the proposition that economic loss should be regarded as "injury to property." *Trust Company of Norfolk v. Fletcher,* 152 Va. 868, 148 S.E. 785 (1929); *Worrie v. Boze,* 198 Va. 533, 95 S.E.2d 192 (1956); *Progressive Realty Corp. v. Meador,* 197 Va. 807, 91 S.E.2d 645 (1956); *Westover Court Corp. v. Eley,* 185 Va. 718, 40 S.E.2d 177 (1946); *Winston v. Gordon,* 115 Va. 899, 80 S.E. 756 (1914); *Keepe v. Shell Oil,* 220 Va. 587, 260 S.E.2d 722 (1979). It is questionable, however, whether these cases are relevant. They are not, for example, cases interpreting § 8.01–223. Also, they are all apparently from a line of cases involving a Virginia statute of limitations, where the courts were deciding whether to apply a five-year statute of limitations rather than a one-year statute of limitations. Moreover, Bryant cites *McFadden v. McNorton,* 193 Va. 455, 69 S.E.2d 445 (1952) for the general proposition that when a legislature passes a law it is presumed to know the construction given to words and phrases by courts of law. *McFadden,* however, was referring to the courts' interpretation of the provisions of predecessor statute, not their interpretation of an entirely different statute. We are thus unpersuaded that the Virginia legislature, in enacting § 8.01–223, was bound by the Virginia courts' interpretations of an unrelated statute.

It should be noted that those courts outside Virginia which have addressed the issue of the liability of design professionals for negligence in the absence of privity are split in their results. *Compare Shoffner Industries, Inc. v. W.B. Lloyd Construction Co.,* 42 N.C.App. 259, 257 S.E.2d 50 (1979), *cert. denied,* 298 N.C. 296, 259 S.E.2d 301 (1979) (contractor may recover from architect any costs resulting from architect's negligence even though not in privity with architect), *Blecick v. School Dist.,* 2 Ariz.App. 115, 406 P.2d 750 (1965) (architects not liable, absent privity of contract, to contractors in tort for the preparation of defective plans and specifications). Bryant points out that the majority of courts which have addressed the issue have found a cause of action to exist. Brief of the Appellant at 11. Pirnie, however, maintains that the emerging trend is to the contrary. Brief for Appellees at 11. We adhere to our conclusion that there is no such cause of action under Virginia law based on our interpretation of § 8.01–223 and on the decisions of numerous lower Virginia Courts.

### III.

▮ As indicated above, Bryant sued the City of Fredericksburg for breach of contract. The City filed a motion, pursuant to F.R.Civ.P. 12(b)(1), to dismiss Bryant's claim for lack of subject matter jurisdiction. In arguing that the district court lacked jurisdiction, the City relied on the following forum selection clause in its contract with Bryant:

Section 16.1

All claims, disputes and other matters in question between OWNER [Fredericksburg] and CONTRACTOR [Bryant] arising out of, or relating to the Contract Documents or the breach thereof, except for claims which have been waived by the making or acceptance of final payment as provided by Paragraph 14.11,

shall be decided by the Circuit Court of the City of Fredericksburg.

The district court, noting that it did have subject matter jurisdiction, declined to exercise that jurisdiction because of the forum selection clause. The court applied Virginia law and determined that Virginia would follow the federal rule on such clauses.[8] The court noted that both the Supreme Court and this Court have addressed the validity of forum selection clauses, holding such clauses to be enforceable if reasonable. *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Mercury Coal & Coke v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315 (4th Cir.1982).

In *The Bremen,* the Supreme Court found that forum selection clauses are presumptively valid and should be enforced unless the clause is "unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." 407 U.S. at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523. Moreover, the burden is on the party objecting to enforcement of the clause to make this showing. *Id.* at 15, 92 S.Ct. at 1916, 32 L.Ed.2d at 523.

While *The Bremen* is an admiralty case involving an international contract, this Court has applied its reasoning in diversity cases not involving international contracts. *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.,* 696 F.2d 315 (4th Cir.1982). In *Mercury,* this Court upheld a forum selection clause in a contract between a West Virginia coal dealer and a New York coal dealer requiring all disputes to be litigated in the Supreme Court of New York for the County of New York.

Bryant contends that the clause is invalid because of the parties' unequal bargaining power. Bryant stresses that the contract was prepared by Pirnie, as an agent of the City, and that it was nonnegotiable, as part

---

**8.** While Virginia courts have not addressed this specific issue, they have held that the contracting parties may by agreement choose what law will govern their contract. *Woodson v. Celina Mutual Insurance Co.,* 211 Va. 423, 177 S.E.2d 610 (1970); *Union Central Life Insurance Co. v. Pollard,* 94 Va. 146, 26 S.E.2d 421 (1896); *see also Wellmore Coal Corp. v. Gates Learjet Corp.,* 475 F.Supp. 1140 (W.D.Va.1979).

of a competitive bidding process. Bryant further argues that enforcement of the clause will deprive it of a neutral forum and will effectively deprive it of a fair jury trial because jurors from the Fredericksburg area would be sympathetic to the City and would have a financial interest, as taxpayers, in the outcome of the suit.

The district court found the clause to be reasonable and enforceable. Joint Appendix at 43. We agree with the district court and affirm its decision to decline jurisdiction over Bryant's claim against the City. As the district court pointed out, the selection of a state tribunal of general jurisdiction is a reasonable one. The selected forum possesses expertise in Virginia law, which is the law to be applied in the underlying dispute. The events giving rise to this lawsuit occurred in Virginia, and many of the witnesses are likely to reside there. Thus, the Circuit Court for the City of Fredericksburg is both a logical and convenient choice.

We do not find persuasive Bryant's contention that the Circuit Court for the City of Fredericksburg would not be a neutral forum. The burden is on the objecting party to show that a forum selection clause is unreasonable or unjust, and Bryant has failed to offer any evidence to support this allegation of bias. Furthermore, there are steps which Bryant may take to assure itself of a fair jury in state court. We are also unpersuaded by Bryant's contention that the forum selection clause is invalid because of unequal bargaining power or because the contract was let pursuant to a competitive bidding process. There is nothing in the record to suggest that Bryant is an unsophisticated entity lacking sufficient commercial expertise to be able to decide whether to enter into a given contract. While the fact that the contract was entered into following competitive bidding does suggest that there was little negotiation regarding its terms, Bryant was aware of the provisions of the contract, chose to submit a bid, and freely entered into the contract with the City of Fredericksburg. We see no reason why the parties should not be held to the terms of their agreement.

The order of the district court is AFFIRMED.